UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MICHAEL LEACH, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 19-cv-947 (APM) |
| DISTRICT OF COLUMBIA, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION**

The court previously entered summary judgment in favor of all Defendants as to all claims, except for one defendant, then known as Officer Doe One. The prevailing Defendants included the District of Columbia, Officer John Bewley, and sixteen other Metropolitan Police Department ("MPD") officers. The court entered judgment in their favor on Plaintiff's constitutional claims under 42 U.S.C. § 1983 for use of excessive force by Officer Bewley (Count 1) and for failing to intervene by all of the Officer Doe Defendants (Count 3). The court also granted Defendants summary judgment on Plaintiff's common law and statutory claims: gross and common-law negligence against Officer Bewley and the District of Columbia (Counts 4 and 5) and assault and battery against Officer Bewley and the District of Columbia (Count 6). The court further granted the motion to dismiss as to Plaintiff's claims for municipal liability under § 1983 against the District of Columbia (Count 2) and for negligent training and supervision against the District of Columbia and MPD Chief Robert J. Contee III (Count 7).

Plaintiffs now ask the court to reconsider the foregoing rulings. Defendants also move for summary judgment on the remaining claims against Officer Doe One—now identified as Officer

David Whitehead—and against the District insofar as it is alleged to be vicariously liable for Officer Whitehead's alleged use of excessive force and for assault and battery. For the reasons that follow, the court denies both Plaintiff's motion for reconsideration and Defendants' motion for summary judgment.

I.

*Motion for Reconsideration.* Plaintiff seeks reconsideration under Federal Rule of Civil Procedure 54(b). Under Rule 54(b), an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). The rule "recognizes [the court's] inherent power to reconsider an interlocutory order 'as justice requires.'" *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (quoting *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22–23 (1st Cir. 1985)). The Rule 54(b) standard is generally "more flexible" than the Rule 59(e) standard for final orders. *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015). While Rule 59(e) motions ordinarily cannot be used to "raise arguments or present evidence that could have been raised before the entry of judgment," 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 2810.1, at 127–28 (2d ed. 1995), Rule 54(b) contains no such "strict prohibition," *Jewell*, 802 F.3d at 26. *See also Pinson v. U.S. Dep't of Justice*, 396 F. Supp. 3d 66, 76 (D.D.C. 2019) (noting that "a trial court has more discretion in applying Rule 54(b) than it does under Rule[] 59(e)"). Thus, the court may grant a Rule 54(b) motion for reconsideration if there are "good reasons for doing so." *Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005)). "Justice may require revision when the Court has 'patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a

2

controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court.'" *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)). Errors of apprehension may include the court's "failure to consider 'controlling decisions or data[] that might reasonably be expected to alter the conclusion reached by the court.'" *Id.* (quoting *Shrader v. CSX Transp.,* 70 F.3d 255, 257 (2d Cir. 1995)).

*Motion for Summary Judgment.* Rule 56 provides that a court should grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that is capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of" the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made an adequate showing that a fact cannot be disputed, the burden shifts to the party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party may oppose the motion using "any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp.*, 477 U.S. at 324. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[t]o defeat a motion for summary judgment, the non-moving party must offer more than mere unsupported allegations or denials." *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 17 (D.D.C. 2011) (citing *Celotex*, 477 U.S. at 324). In other words, if the nonmovant's

"evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

## II.

### A.

The court will not restate the facts it previously found to be undisputed, as they are detailed in the court's earlier opinion. *See Leach v. D.C.*, No. 19-cv-947 (APM), 2022 WL 1316436, at *6 (D.D.C. May 3, 2022). The court addresses the facts as needed to resolve Plaintiff's motion.

In his motion for reconsideration, Plaintiff first argues that the court "misapplied the standard for summary judgment in the absence of any discovery . . . [with] the Court wrongly substitut[ing] its own view of the one-sided evidence before the Court—limited, and apparently redacted, body-worn camera ("BWC") footage submitted by the Defendants—for the Plaintiff's well-pleaded allegations of what occurred in the interaction." Pl.'s Mot. for Recons., ECF No. 116 [hereinafter Pl.'s Mot.], at 1. In particular, Plaintiff maintains that the court's "reliance on *Scott v. Harris*, 550 U.S. 372 (2007) [] was misplaced." *Id.* at 1–2. Plaintiff argues that unlike in *Scott*, the video evidence on which the court relied here did not "clearly contradict" the version of events alleged by Plaintiff or "clearly portray" the events in question, and thus, granting summary judgment based solely on the video evidence was improper. *Id.* at 6 (internal quotation marks omitted). He asserts that there are "significant disputes of material fact," that the video Defendants provided "showed only a limited view of the events," and that the court "did not have available to it other BWC evidence and testimonial evidence that could have led the Court, and could lead a jury, to a different conclusion about the events." *Id.* at 2. Plaintiff also contests various factual findings made by the court regarding the video evidence provided, including that (1) "Plaintiff appeared to lunge towards Officer Bewley," (2) "when Bewley tried to wrest the gun from

4

Plaintiff, Plaintiff resisted," (3) it was "beyond dispute that Plaintiff presented a mortal danger to Defendant Officers," (4) Officer Bewley warned Plaintiff, and (5) "Defendants here 'were anticipating encountering a suspect with a gun' who had recently shot at someone." *Id.* at 11–12.

In addition to challenging the court's previous factual findings, Plaintiff for the first time has produced evidence—evidence that he apparently had in his possession but did not present in response to the summary judgment motion. Plaintiff has now produced 13 videos which he claims "allow[] for a more complete picture of the events at issue than the carefully-curated BWC footage shown to the Court by the Defendants." *Id.* at 2, 8.[1] Plaintiff also believes that additional discovery may reveal additional video evidence, including Officer Whitehead's BWC video, if it exists, or may allow Plaintiff to assert that Defendants "doctored or altered" the previous footage provided. *Id.* at 10–11.

Plaintiff finally contends that the court should not have granted summary judgment on the basis of qualified immunity and qualified privilege without allowing discovery. *Id.* at 15–19. He

---

[1] The court notes that when it first considered Defendant Metropolitan Police Department's first motion for summary judgment, the court had one video before it, titled "Exhibit 2 - 023- 106_4363_BARNABY_RD_SE." *See* Def. MPD's Mot. for Summ. J., ECF No. 16. When it considered Defendants' motion to dismiss or in the alternative, its second motion for summary judgment, it had additional videos to reference—"Ex. 4 - Michael Leach (2)" and "Weiland BWC Footage." *See* Defs.' Mot. to Dismiss or in the Alt. Mot. for Summ. J., ECF No. 73. The court now has received 13 videos with Plaintiff's Motion for Reconsideration, titled "Ex. 1a - 20170322-CPWL-_4363_BARNABY_RD_SE", "Ex. 1b - 20170322-CPWL-4363_BARNABY_RD_SE (Bewley)", "Ex. 1c - 20170322-CPWL-4363_BARNABY_RD_SE (Fucci)", "Ex. 1d - 20170322-CPWL-4363_BARNABY_RD_SE (Laury)", "Ex. 1e - 20170322-CPWL-4363_BARNABY_RD_SE (Zaw)", "Ex. 1f - 20170322-CPWL-4363_BARNABY_RD_SE (Ewing)", "Ex. 1g - 20170322-CPWL-4363_BARNABY_RD_SE (Keleman)", "Ex. 1h - 20170322-CPWL-4363_BARNABY_RD_SE (Keleman)", "Ex 1i - 20170322-CPWL-4363_BARNABY_RD_SE (Roman)", "Ex. 1j - 20170322-CPWL-4363_BARNABY_RD_SE (Weiland)", "Ex 1k - 20170322-CPWL-4363_BARNABY_RD_SE (White)", "Ex 1l - 20170322-CPWL-4363_BARNABY_RD_SE (Williams)", and "Ex. 1m - 20170322-CPWL-4363_BARNABY_RD_SE (Laury)2." *See* Pl.'s Mot. The court notes it previously received several of these videos from Plaintiff in his response to order to show cause, ECF No. 105. *See* Pl.'s Resp. to Order to Show Cause, ECF No. 105, Ex. 4, ECF No. 105-4. These videos included files titled Ex. 4a - 20170322-CPWL-_4363_BARNABY_RD_SE; Ex. 4b - 20170322-CPWL-4363_BARNABY_RD_SE (Bewley); Ex. 4c - 20170322-CPWL-4363_BARNABY_RD_SE (Fucci); Ex. 4d - 20170322-CPWL-4363_BARNABY_RD_SE (Laury); and Ex. 4e - 20170322-CPWL-4363_BARNABY_RD_SE (Zaw).

5

also argues that both qualified immunity and qualified privilege should not apply given the facts at hand. *Id.*

The court finds none of Plaintiff's arguments convincing.

**B.**

The court did not misapply the standard for summary judgment, and the reliance on *Scott* was not misplaced. Defendants moved to dismiss or, in the alternative, for summary judgment before discovery. Defendants produced evidence with its motion. That evidence included BWC footage, Plaintiff's plea agreement, the proffer of facts to which he admitted when pleading guilty, and police reports. *See* Defs.' Mot. to Dismiss or in the Alt. Mot. for Summ. J., ECF No. 73 [hereinafter Defs.' Mot.], Exs. 1–8, ECF Nos. 73-1–8. Unless the court excluded the evidence, which it did not, it was required to treat the motion as one for summary judgment, which it did. FED. R. CIV. P. 12(d).

Although moving for summary judgment before discovery starts is unusual, it is not improper. FED. R. CIV. P. 56(b) (stating that a party may file a motion for summary judgment "at any time until 30 days after the close of all discovery"). Ordinarily, summary judgment is premature unless all parties have "had a full opportunity to conduct discovery." *Anderson*, 477 U.S. at 257. But when a party moves for summary judgment before discovery, and the nonmovant believes it lacks facts to respond, the nonmovant must "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d); *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 530 (D.C. Cir. 2019) (stating that, "regardless of the time at which a motion for summary judgment is filed, an affidavit or declaration submitted under Rule 56(d) must" meet the criteria set forth in *Convertino v. U.S. Dep't of Just.*, 684 F.3d 93, 99–100 (D.C. Cir. 2012)). If the nonmovant files such affidavit or declaration with sufficient

6

particularity, the request for more time "should be granted 'almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence.'" *Convertino*, 684 F.3d at 99 (quoting *Berkeley v. Home Ins.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995)).

Here, Plaintiff offered no evidence in response to Defendant's motion for summary judgment (he only now belatedly offers evidence) and filed no Rule 56(d) affidavit or declaration to support a request for discovery (he only now belatedly files one). *See* Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot. to Dismiss or in the Alt. for Summ. J., ECF No. 80 [hereinafter Pl.'s Opp'n]. Indeed, in response to Defendant's statement of undisputed material facts, Plaintiff cited only to his unverified amended complaint. *See* Pl.'s Opp'n, Pl.'s Counter-Statement of Material Facts, ECF No. 80-1 [hereinafter Pl.'s Bewley MSJ Counter-Statement], at 2 (citing to "ECF No. 60-1" which is Plaintiff's First Amendment Complaint). But "it is well established that [a plaintiff] cannot rely on the allegations of her own complaint in response to a summary judgment motion, but must substantiate them with evidence." *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015). Plaintiff offered no evidence. The court therefore was permitted to accept as true Defendants' factual averments. FED. R. CIV. P. 56(e)(2). Plaintiff is therefore incorrect to assert that "the Court wrongly substituted its own view of the one-sided evidence before the Court . . . for the Plaintiff's well-pleaded allegations of what occurred in the interaction." Pl.'s Mot. at 1. The court properly considered the evidence before it and appropriately did not accept as proof Plaintiff's "well-pleaded allegations."

Contrary to Plaintiff's suggestion, the court did not indiscriminately accept as true Defendants' description of the relevant events. As the court's opinion reflects, it carefully reviewed the video and other evidence in making its factual findings. *Leach*, 2022 WL 1316436, at *2 n.2. That is precisely what precedent permitted the court to do. "When opposing parties tell

two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.  In *Scott*, the Supreme Court noted that the video of the incident in question "clearly contradicts the version of the story" told by Plaintiff and instructed that the lower court "should have viewed the facts in the light depicted by the videotape," even in a motion for summary judgment. *Id.*  Here, Plaintiff did not offer any evidence to support his "version of the story," so the video evidence was the only evidence before the court. Thus, there was no alleged contradiction of proof for the court to assess.

Still, the court did not blindly accept Defendants' characterization of the video. It independently scrutinized the BWC footage and compared it to the facts *alleged* by Plaintiff.  In Plaintiff's Counter-Statement of Material Facts, Plaintiff repeatedly offered generalizations such as "[t]he information captured by those BWCs is an incomplete representation of the events that occurred."  Pl.'s Bewley MSJ Counter-Statement at 5.  He claimed that he "did not threaten Defendant Officers (or anyone else) with a weapon)," he "never wielded a weapon at or in the direction of the Defendant Officers," there was not a "skirmish" because "Plaintiff never resisted," Officer Bewley "without reason or justification" fired three shots after his first shot, and Bewley fired a fifth shot "when Plaintiff was subdued and on the ground." *Id.* at 5–7.  Plaintiff's narrative is clearly belied by the video evidence.  As explained in the court's prior opinion, when first encountering Plaintiff, Officer Bewley and another officer repeatedly instructed Plaintiff to show what was in his right hand. *Leach*, 2022 WL 1316436, at *2.  Plaintiff did not comply with those commands.  *Id.*  Instead, he moved towards the officers, at which point Officer Bewley saw Plaintiff holding a gun in his right hand.  *Id.*  Plaintiff was only feet away.  *Id.*  Officer Bewley then reached for the gun (while instructing Plaintiff to drop his weapon) and tried to wrest it from

8

Plaintiff, who again did not comply. *Id.* Thereafter, Officer Bewley and Plaintiff struggled over the weapon for approximately two to three seconds before Officer Bewley shot Plaintiff multiple times at close range. *See id.*; Pl.'s Mot., Ex. 1a, ECF No. 116-3, at 00:34-00:48 (Barnaby Rd Footage).

The video evidence indisputably shows that, at all steps of this interaction, Plaintiff did not comply and presented a threat to responding officers. He "maintained his grip on the gun despite repeated calls for him to first show his right hand and then drop the weapon" and "when Bewley tried to wrest the gun from Plaintiff, Plaintiff resisted." *Leach*, 2022 WL 1316436, at *6. Further, it is beyond dispute that Bewley provided a verbal warning prior to shooting when he told Plaintiff to "drop the fucking gun" and "drop the gun" with his own weapon raised prior to the shots. *Id.* And, as previously discussed, Plaintiff "was not already on the ground when Officer Bewley fired his final shot. Bewley fired all five shots in a span of two to three seconds." *Id.* During this time period, "Plaintiff went from standing to slumping back on the door of the neighboring apartment. Plaintiff may have been losing his balance and sliding toward the ground at the time Bewley fired the final shot, but he was still upright when the fifth and final shot was fired." *Id.* (internal citations omitted). In sum, the video clearly depicts a version of events different than that *alleged* by Plaintiff. The actual evidence shows that Plaintiff was a threat to the officers because he refused their commands to show his right hand and then did not drop the weapon when told to do so. Instead, he struggled with Officer Bewley, who then fired five shots in quick succession while Plaintiff was still upright. No amount of additional evidence can change the events clearly depicted in the videos.

C.

Plaintiff criticizes certain of the court's factual findings, asserting that "the Court improperly substituted its view of the video evidence for what a reasonable jury could find in this case." Pl.'s Mot. at 11.

First, he contends that the video evidence does not show, as the court wrote, that Plaintiff "appeared to *lunge* towards Officer Bewley." *Id.* Plaintiff is arguably correct. He may not have "lunge[d]" at Officer Bewley. He did, however, as the court wrote in the factual summary, "move[] closer to the officers" after being instructed repeatedly to display his right hand and refusing to comply. *Leach*, 2022 WL 1316436, at *2. He then—although the court did not say so specifically—raised his left hand as he moved towards Officer Bewley and perhaps even contacted his chest area, as the BWC footage momentarily becomes obscured. This happens immediately before the two struggle over the gun. The court's use of the word "lunge" does not change the undisputed facts depicted in the video that supported the court's grant of summary judgment.

Next, Plaintiff asserts that a reasonable jury could find, contrary to the what the court said, that he did not "resist" when Officer Bewley attempted to "wrest the gun" from him. Pl.'s Mot. at 11–12. To "resist" means "to exert oneself so as to counteract or defeat" or "to withstand the force or effect of."[2] That is precisely what the video shows Plaintiff did. He did not drop the gun when instructed; he held onto it as Officer Bewley tried to take it from him. That is resistance. And Officer Bewley did not "simultaneously" shoot Plaintiff as he reached for the gun. Pl.'s Mot. at 12. The video evidence establishes that two to three seconds pass after Officer Bewley and Plaintiff struggle over the gun before the shots are fired. In any event, the court knows of no case that would require an officer to wait a certain amount of time before using deadly force when a

---

[2] *Resist*, MERRIAM-WEBSTER'S DICTIONARY, https://www.merriam-webster.com/dictionary/resist (last visited Mar. 22, 2023).

10

suspect does not give up a gun when directed to do so, and instead physically prevents the officer's efforts to secure the gun.

Plaintiff also disputes the court's conclusion that "[i]t is beyond dispute that Plaintiff presented a mortal danger to Defendant Officers." *Id.* But no reasonable person could think otherwise. Standing only feet from Officer Bewley, Plaintiff refused to show his hand when told; did not drop the weapon when commanded to do so; and continued to hold onto the firearm as Officer Bewley tried to disarm him. Plaintiff's actions presented a "mortal" danger; he cites no case that would suggest otherwise.

He next contends that a reasonable jury could conclude that he received no "meaningful warning" before he was shot. Pl.'s Mot. at 12. That is simply not true. The video unequivocally shows that Plaintiff had the opportunity to drop the gun, as he was commanded to do, before he was shot.

Finally, Plaintiff faults the court's statement that "Defendants here 'were anticipating encountering a suspect with a gun' *who had recently shot at someone.*'" *Id.* (citing *Leach*, 2022 WL 1316436, at *7). He says it is "not in evidence that the suspect recently shot at someone." *Id.* But that is not true. The factual proffer to which Plaintiff admitted when he pleaded guilty says: "Complainant located Defendant laying in the bathtub. Complainant stated Defendant then produced a pistol, pointed it in his direction and fired a round. A single slug was later recovered from the bathroom wall." Defs.' Mot., Ex. 1, ECF No. 73-1. It may be that the responding officers did not know that Plaintiff had shot at *someone*, but they were responding to "a report of a shooting." *Id.* Plaintiff nowhere explains why this difference is at all material.

11

**D.**

Plaintiff now contends that video evidence that he apparently had all along but did not submit shows a different set of facts that favor Plaintiff. It does not. If anything, the addition of other videos from other officers' BWCs lends further credence to the videos previously provided by Defendants. Plaintiff himself does not identify anything on the additional videos that would materially change the court's prior factual findings.[3]

Plaintiff explains that he did not submit the videos he possessed earlier because he "could not verify the authenticity of the BWC footage that his lawyers obtained." Pl.'s Mot. at 8. He further says that he "was reluctant to assert to the Court the accuracy, authenticity, or completeness of the BWC footage presented by Defendants or of the BWC footage Plaintiff's counsel had separately obtained." *Id.* at 10. While the court understands the caution exercised by Plaintiff's counsel, it was unwarranted. Plaintiff could have put the additional videos before the court and advised, as he does now, that he could not vouch for their "accuracy, authenticity, or completeness." It may be that Defendants would not have objected to them—they do not question their authenticity now—and they would have been deemed admissible. And, even if Defendants had raised doubts, pre-discovery foundational concerns likely would have gone only to the weight of the evidence, not their admissibility.

In any event, as discussed, the court has carefully reviewed the new video evidence and it does not cause the court to alter any factual finding or legal conclusion.

---

[3] The fact that Officer Bewley joked with other officers prior to the incident that he hoped "something crazy happens" so that someone could review the footage of his fellow officer calling him names also does not defeat a granting of qualified immunity, as the essential facts entitling qualified immunity remain the same. *See* Pl.'s Mot., Exs. 1a-1m, ECF No. 116-3 at 11 (Weiland BWC at 10:11-10:39).

E.

Finally, Plaintiff alludes to the possibility that videos upon which the court did rely at summary judgment were in fact "doctored or altered" and additional discovery might bear that out. *Id.* But discovery is not intended to be a fishing expedition about mere possibilities. Even armed with his own videos, Plaintiff has not identified any specific instance in the video evidence upon which the court relied that appears doctored or altered in any way. Plaintiff's speculation does not warrant reconsideration.

F.

Plaintiff also faults the court for its application of the law. Plaintiff brings forth various out-of-circuit opinions, many of which were decided *after* the incident in question, to support his reliance on *Hensley ex rel. N.C. v. Price*, 876 F.3d 573, 585 (4th Cir. 2017), to bolster his arguments against qualified immunity. The court maintains that *Hensley*, a non-binding precedent, does not apply and does "not support a claim that Plaintiff had a clearly established right to a more explicit warning before Officer Bewley used deadly force." *Leach*, 2022 WL 1316436, at *7. And the new cases cited by Plaintiff fare no better.

Take *Knibbs v. Momphard*, another Fourth Circuit case decided after Plaintiff's incident. 30 F.4th 200 (4th Cir. 2022). In *Knibbs*, the court vacated a district court's grant of summary judgment on a § 1983 claim against an officer who approached the victim's home to investigate a property crime and—with "no lights on inside or outside the house" and with the victim unable to "see who was outside saying 'sheriff's office'"—shot the victim "simply because he stood in his living room holding a shotgun." *Id.* at 214. *Knibbs* bears no resemblance to this case. The officers here responded to a very different scene—they were called to the building due to a "shooting," Plaintiff was in the hallway holding a weapon, Plaintiff could see and hear Officer's Bewley

13

warnings to drop the gun, and Plaintiff refused to do so. And, unlike *Knibbs*, Plaintiff here does not suggest he was "lawfully possessing a firearm for self-defense in [his] own home." *Id.* at 222. The court maintains Officer Bewley is entitled to qualified immunity and the comparable qualified privilege.

### G.

Plaintiff lastly argues in his motion for reconsideration that the court incorrectly "granted the motion to dismiss prior to discovery that would prove or disprove Plaintiff's allegations" regarding Count 2 (Municipal Liability) and Count 7 (Negligent Training and Supervision). Pl.'s Mot. at 3. Specifically, Plaintiff states that the court "incorrectly dismissed Plaintiff's municipal liability claim on the ground that Plaintiff failed to identify comparable situations where lethal force was used. In so doing, the Court failed to accept as true Plaintiff's assertions in his Complaint, as required in a motion to dismiss." *Id.* Further, Plaintiff notes that as to the negligent training and supervision claim, "the Amended Complaint asserts '[t]he District of Columbia knew or should have known that MPD officers were using unreasonable and excessive force'" and that the court incorrectly "rejects that contention in the absence of evidence by Plaintiff that could have been obtained only through discovery." *Id.* at 4. Plaintiff states that his complaint "sufficiently alleges the District's responsibility for the excessive force used on Plaintiff in Count 2 and its negligent training and supervision in Count 7." *Id.* at 20. Plaintiff further asserts that he "clearly alleged a custom, policy or deliberate indifference by the District and that the District failed to adequately train, supervise, control and discipline its officers, leading to a deprivation of Plaintiff's Fourth Amendment right to be free from excessive force." *Id.*

Plaintiff's arguments are unpersuasive. As previously discussed in the court's prior opinion, Plaintiff did not allege any data specific to the lethal use of force by MPD officers that

14

predates the March 2017 incident that would have made out a plausible theory of municipal liability based on deliberate indifference or custom. *Leach*, 2022 WL 1316436, at *12–13. His largely conclusory assertions quoted above are not to be taken as true and cannot make up for the absence of factual allegations. His negligent training and supervision claim fails for the same reasons.

* * *

In sum, the court denies Plaintiff's motion for reconsideration. The court did not patently misunderstand Plaintiff, it did not make a decision outside the adversarial process, it did not make an error of apprehension, and there has not been a controlling or significant change in the law or facts. Justice does not require vacating the court's earlier ruling.

## III.

Officer Whitehead and the District of Columbia now move for summary judgment, claiming that Whitehead "is entitled to qualified immunity for Plaintiff's Fourth Amendment excessive force claim (Count I) and qualified privilege on Plaintiff's assault and battery claim (Count VI)," and that because of this, "the District is entitled to an order granting summary judgement in its favor to the extent that it is liable for Whitehead's actions under a respondeat superior theory." Defs.' Officer David Whitehead and the District of Columbia's Mot. for Summ. J., ECF No. 120, Def.'s Mem. of P. & A. in Supp. of Mot., ECF No. 120-1, at 1. The court denies without prejudice Defendants' motion for summary judgment to allow Plaintiff access to limited additional discovery.

Under Federal Rule of Civil Procedure 56(d), if a nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or

declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d). Under this rule, the movant must submit an affidavit which states with sufficient particularity why additional discovery is necessary. *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008). The affidavit must satisfy three criteria. First, the affidavit "must outline the particular facts he intends to discover and describe why those facts are necessary to the litigation." *Convertino*, 684 F.3d at 99. Second, the affidavit "must explain 'why he could not produce the facts in opposition to the motion for summary judgment.'" *Id.* at 99–100 (quoting *Carpenter v. Fed. Nat'l Mortg. Ass'n,* 174 F.3d 231, 237 (D.C. Cir. 1999) (cleaned up). And third, the affidavit "must show the information is in fact discoverable." *Id.* at 100.

Plaintiff has submitted such an affidavit in his opposition to Defendants' motion for summary judgment. Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot., ECF No. 124, Decl. of Mark Srere, ECF No. 124-2 [hereinafter Pl.'s Aff.]. Plaintiff, through his affidavit, seeks BWC footage from Officer Whitehead and from the "three Defendant Officers who subdued Plaintiff after he had fallen to the ground after being shot"; "individual officer's training and personnel records"; and the radio run audio. *Id.* at 2–3. To begin, Plaintiff and the court have already received the radio run, so this request is moot. Defs.' Officer David Whitehead and the District of Columbia's Reply in Supp. of Mot., ECF No. 126, Ex. 4, ECF No. 126-2. Additionally, the court will deny the request for the officers' training and personnel records as Plaintiff has not demonstrated how this information would impact the court's understanding of the events depicted in the responding officers' BWCs.

The court, however, will allow limited discovery so Plaintiff can obtain the additional BWC footage. Plaintiff's affidavit meets all three *Convertino* criteria. First, it asks for the particular facts he intends to discover—Officer Whitehead's and other officers' BWC footage—

16

and explains that this evidence is necessary "to resolve genuine issues of material fact, particularly as to the accuracy, authenticity, and completeness of the BWC footage Defendants produced to the Court and other footage Plaintiff has received." Pl.'s Aff. at 2. Second, the affidavit explains why Plaintiff could not produce this information himself: Defendants uniquely possess the BWC footage, including from Officer Whitehead and, to the extent he has secured some footage on his own, only Defendants can authenticate it and verify completeness. *Id.* Finally, the footage sought is discoverable if it exists. *Id.*

In sum, Defendants' motion for summary judgment is denied without prejudice, and Defendants shall disclose all BWC footage involving Plaintiff and this incident.

**IV.**

For the reasons set forth above, the court denies Plaintiff's Motion for Reconsideration, ECF No. 116, and denies without prejudice Defendants' Motion for Summary Judgment, ECF No. 120. Defendants shall produce to Plaintiff by April 26, 2023, all remaining pertinent BWC footage. Within 14 days, the parties shall meet and confer about a schedule for further proceedings, if necessary, and submit a Joint Status Report by May 16, 2023.[4]

Dated: March 27, 2023

Amit P. Mehta
United States District Court Judge

---

[4] The court remains grateful to appointed counsel for its zealous representation of Plaintiff.