UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MICHAEL LEACH, ) | |
| Plaintiff, ) | |
| v. ) | Case No. 19-cv-00947 (APM) |
| DISTRICT OF COLUMBIA et al., ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Following the court's decision to permit additional discovery, Defendants Officer David Whitehead and the District of Columbia now renew their Motion for Summary Judgment, ECF No. 154 [hereinafter Defs.' Mot.]. Defendants argue that Officer Whitehead is entitled to qualified immunity on Plaintiff Michael Leach's excessive-force claim and qualified privilege on his assault-and-battery claim. And, Defendants reason, if Officer Whitehead is immune from the underlying claims, Plaintiff cannot maintain a vicarious liability claim against the District of Columbia. For the reasons that follow, the court agrees and therefore grants Defendants' motion.

### II. BACKGROUND

The court has already found some of the relevant facts undisputed and, having detailed much of the case's background in that decision, provides only the facts and procedural history necessary to resolve the present motion. *See Leach v. District of Columbia* (*Leach I*), No. 19-cv-947 (APM), 2022 WL 1316436, at *1–2 (D.D.C. May 3, 2022).

### A. Factual Background

On March 22, 2017, Plaintiff went to visit an acquaintance at his apartment. *Id.* at *1. At some point, Plaintiff went to use the bathroom. *Id.* Later, when he had not returned, Plaintiff's acquaintance tried to get him to open the door. *Id.* The acquaintance was unsuccessful, so he forced the door open. *Id.* He found Plaintiff lying in the bathtub and smelled PCP. *Id.* Plaintiff drew a gun, pointed it at the acquaintance, and fired, but thankfully he missed. *Id.*

District of Columbia Metropolitan Police Department (MPD) officers arrived shortly thereafter in response to a call that shots were fired. Pl.'s Opp'n to Defs.' Mot., ECF No. 157 [hereinafter Pl.'s Opp'n], Pl.'s Counter-Stmt. of Material Facts, ECF No. 157-4 [hereinafter Pl.'s Stmt.], ¶ 1. When the officers approached the apartment, they saw Plaintiff standing in the doorway. *Leach I*, 2022 WL 1316436, at *2. Plaintiff stood with his left side toward the officers, so they could not see his right hand. *Id.* The officer closest to Plaintiff, Officer John Bewley, asked Plaintiff what was going on and to show him his right hand. *Id.* Plaintiff did not respond. *Id.* Plaintiff then moved toward Officer Bewley, at which point Officer Bewley noticed Plaintiff was holding a gun in his previously concealed hand. *Id.* Officer Bewley shouted repeatedly for Plaintiff to drop the gun and tried to reach for it. *Id.* Officer Bewley then fired five shots in quick succession, striking Plaintiff in the stomach, groin, buttocks, and legs. *Id.* Plaintiff fell to the floor. *Id.*

Several officers—who, at that point, did not know who had fired the shots—rushed forward to subdue Plaintiff and retrieve his gun. Defs.' Mot., Defs.' Stmt. of Material Facts, ECF No. 154-2 [hereinafter Defs.' Stmt.], ¶¶ 14, 17, 19; Defs.' Mot., Ex. 6, Dep. of Artavius Williams, ECF No. 154-8 [hereinafter Williams Dep.], at 6:11–7:5.[1] Officer Whitehead positioned himself near

---

[1] All exhibit page numbers refer to CM/ECF pagination.

Plaintiff's head and was leaning over his face. Pl.'s Stmt. ¶ 18. Officer Whitehead tried to grab Plaintiff's left arm but felt it tense, as if Plaintiff was trying to grab or hold on to something. Defs.' Stmt. ¶ 22; Defs.' Mot., Ex. 5, Dep. of David Whitehead, ECF No. 154-7 [hereinafter Whitehead Dep.], at 14:20–15:5. The officers commanded Plaintiff to drop the gun several times but still could not wrestle it free. Defs.' Stmt. ¶¶ 20–21.

Officer Whitehead then began striking Plaintiff in the face. Pl.'s Stmt. ¶ 23. Seconds later, Officer Bewley shouted, "I got it!" Defs.' Stmt. ¶ 24; Pl.'s Opp'n, Ex. C., Zaw BWC Footage [hereinafter Zaw BWC], at 0:45–0:49. Just afterward, Officer Whitehead stopped striking Plaintiff. Zaw BWC at 0:49-55.

The officers then tried to place Plaintiffs in handcuffs but had difficulty doing so. Pl.'s Stmt. ¶¶ 26–27. Although they had confiscated the gun, they were concerned that he might have another weapon. Whitehead Dep. at 15:6-10, 20:3-17, 24:10–25:3; Williams Dep. at 8:6-11, 9:4-20; Zaw BWC at 1:25-28 (one officer yelling, "I don't know what he has under there!"). Officer Whitehead resumed striking Plaintiff, striking him ten more times in total. Pl.'s Stmt. ¶¶ 25, 28. As Officer Whitehead did so, he repeatedly told Plaintiff to "stop resisting." *Id.*

Eighty-one seconds after retrieving the gun, the officers placed Plaintiff in handcuffs. Defs.' Stmt. ¶ 37. Right up until then, officers shouted to each other to grab Plaintiff's arms or to grab his hands. *See generally* Zaw BWC.

Plaintiff was hospitalized for his injuries. *Leach I*, 2022 WL 1316436, at *2.

**B.     Procedural Background**

Plaintiff initially filed suit against MPD and an "Officer Clay," whom he believed to be the officer that shot him. *Id.* After denying MPD's motion for summary judgment, the court substituted the District of Columbia as the proper defendant. *Id.* Plaintiff then filed an amended

3

complaint, proceeding against the District of Columbia, the Chief of MPD, and sixteen MPD Officers, including Officer Bewley and two unnamed officers.  Am. Compl., ECF No. 70 [hereinafter Am. Compl.].  Defendants moved to dismiss or, in the alternative, for summary judgment. *Leach I*, 2022 WL 1316436, at *2.  The court granted the motion as to almost all claims and Defendants, except for Plaintiff's excessive-force and assault-and-battery claims against one of the unnamed officers—later identified as Officer Whitehead—and accompanying vicarious liability claims against the District of Columbia.  *See id.* at *13; Am. Compl. at 16–28.

Plaintiff moved for reconsideration, but the court denied the motion.  *Leach v. District of Columbia* (*Leach II*), No. 19-cv-947 (APM), 2023 WL 2645707, at *7 (D.D.C. Mar. 27, 2023).

At the same time, the two remaining Defendants moved for summary judgment. Officer Whitehead argued that he is "entitled to qualified immunity for Plaintiff's Fourth Amendment excessive force claim (Count I) and qualified privilege on Plaintiff's assault and battery claim (Count VI)." *Id.* (internal quotation marks omitted).  The District of Columbia maintained that, because Officer Whitehead is entitled to immunity on the underlying claims, "the District is entitled to an order granting summary judgment in its favor to the extent that it is liable for Whitehead's actions under a respondeat superior theory." *Id.* (internal quotation marks omitted).  In response, Plaintiff filed an affidavit stating he needed access to additional discovery to adequately oppose the motion. *Id.*

The court denied Defendants' motion without prejudice to allow for limited additional discovery. *Id.* at *8.  Specifically, the court ordered Defendants to produce more body-worn camera (BWC) footage to Plaintiff. *Id.*  As time went on, the scope of additional discovery expanded to include records of MPD's investigation into the incident and depositions, among other

evidence. *See, e.g.*, Minute Order, May 21, 2024; Minute Order, Oct. 17, 2024. After discovery concluded, Defendants renewed their Motion for Summary Judgment. *See* ECF No. 154.

## III.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute is one in which, viewing the evidence in the light most favorable to the nonmoving party, a reasonable jury could return a verdict in its favor. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). And a fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## IV.   DISCUSSION

The court first clarifies material facts that Plaintiff argues are disputed. The court then analyzes whether Officer Whitehead is entitled to qualified immunity on Plaintiff's excessive-force claim, before turning to Plaintiff's remaining claims for assault and battery and vicarious liability.

### A.   Factual Disputes

As previously mentioned, at summary judgment, the court views the evidence in the light most favorable to the nonmoving party—here, Plaintiff. *Talavera*, 638 F.3d at 308. But to preclude summary judgment, Plaintiff must demonstrate a *genuine* dispute. *Richardson v. Am. Sec. Programs, Inc.*, 59 F. Supp. 3d 195, 199 (D.D.C. 2014). Plaintiff has not done so with respect to two key facts.

*First*, Plaintiff disputes whether he was tensing his arm as officers tried to retrieve the gun. Pl.'s Stmt. ¶ 22. He argues that, in a recorded statement shortly after the incident, Officer

5

Whitehead stated that "the *only* area of Plaintiff that he had 'available to [him] was really [Plaintiff's] *face*,'" rendering his later testimony about grabbing Plaintiff's *arm* less reliable. *Id.* (alterations in original) (emphasis added). Plaintiff continues that, even if Officer Whitehead did have access to Plaintiff's arm, "there is no corroborating evidence that Plaintiff's arm was tensing up." *Id.*

The first of these arguments omits key context. When Officer Whitehead said that only Plaintiff's face was available to him, he was responding to a question about where on Plaintiff's body he delivered strikes. Pl.'s Opp'n, Ex. I, Audio Interview of David Whitehead, at 4:38-45. As Defendants point out, "[t]his exchange is silent on whether Officer Whitehead attempted to grab Leach's arm" before then. Defs.' Reply in Supp. of Defs.' Mot., ECF No. 158, at 5. It thus creates no genuine dispute as to Officer Whitehead's later testimony that he first attempted to "gain control of [Plaintiff's] arm." Whitehead Dep. at 12:6-10.

Plaintiff's contention about the lack of corroborating evidence is also insufficient to create a genuine dispute. Sworn deposition testimony is a "cognizable form[] of evidence at summary judgment." *Harris v. Chao*, 480 F. Supp. 2d 104, 110 n.2 (D.D.C. 2007) (citing *Anderson*, 477 U.S. at 247); *see also* Fed. R. Civ P. 56(c)(1)(A). Therefore, "Defendants are entitled to rely on [Officer Whitehead's] deposition testimony at the summary judgment stage," and "[i]f Plaintiff did not agree with what [he] said at that deposition, it was incumbent on Plaintiff to present competent evidence to rebut" it. *Wood v. Am. Fed'n of Gov't Emps.*, 316 F. Supp. 3d 475, 485 n.6 (D.D.C. 2018). Plaintiff presents no such evidence. Instead, Plaintiff's assertion about the lack of corroborating evidence amounts to "simply [] claiming that [Defendants'] factual assertions are false or incorrect," which is not enough to demonstrate a genuine dispute as to whether Plaintiff

6

tensed his arm while Officer Whitehead tried to restrain him. *Conant v. Wells Fargo Bank, N.A.*, 24 F. Supp. 3d 1, 6 (D.D.C. 2014).

*Second*, Plaintiff disputes that Officer Whitehead temporarily stopped striking him after officers retrieved the firearm. Pl.'s Stmt. ¶¶ 25, 28. According to Plaintiff, the "strikes continued without a break." *Id.* ¶ 28. Not so. Although the pause was brief, the BWC footage shows Officer Whitehead ceasing to administer strikes just after Officer Bewley shouted that he had the gun. Zaw BWC at 0:48–55. Where, as here, objective video evidence establishes a fact, the court "view[s] [it] in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

### B. Excessive Force

Having clarified the record, the court now proceeds to the merits of Defendants' argument that Officer Whitehead is entitled to qualified immunity on Plaintiff's Fourth Amendment excessive-force claim. An officer is entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The unlawfulness of Officer Whitehead's conduct was not clearly established as of March 22, 2017, so the court begins and ends its analysis there. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (granting courts "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first").

The unlawfulness of an officer's conduct is "clearly established" if "then-existing precedent" made it "sufficiently clear that every reasonable official would understand what he is doing is unlawful." *Wesby*, 583 U.S. at 63 (internal quotation marks omitted). "The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* (cleaned up). That authority "must have placed the constitutionality of

7

the officer's conduct 'beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Moreover, the "rule's contours" must not be defined "at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). This is particularly true in the excessive-force context, given the uniqueness of the factual circumstances officers confront in each case. *See Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam). Accordingly, "officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)). So here, the court asks whether precedent clearly established that, following an armed confrontation during which Plaintiff did not respond to commands to drop his weapon and shots were fired, Officer Whitehead could not have lawfully struck Plaintiff several times in the face as officers struggled first to retrieve his weapon and then to handcuff him. While Plaintiff need not identify precedent with the exact same facts, *see Richardson v. District of Columbia*, 322 F. Supp. 3d 175, 186 (D.D.C. 2018), the facts must be similar enough to give an officer "fair warning that their alleged treatment of [Plaintiff] was unconstitutional," *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Binding authority did not clearly establish the unlawfulness of Officer Whitehead's conduct. Plaintiff has not identified any Supreme Court or D.C. Circuit precedent that "squarely governs" the facts of this case. *Kisela*, 584 U.S. at 104; *see also Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015) ("It is [the plaintiffs'] burden to show that the particular right in question—narrowly described to fit the factual pattern confronting the officers—was clearly established." (internal citation omitted)). Plaintiff points only to *Johnson v. District of*

*Columbia*, 528 F.3d 969, 974–75 (D.C. Cir. 2008), in which the D.C. Circuit found that an officer violated the Fourth Amendment when he repeatedly kicked a suspect in the groin who had "raised his hands, turned toward the open door of his apartment, fell face-first to the floor, and spread his arms and legs in a manner announcing submission."  But *Johnson* is distinguishable.  Here, Plaintiff did not act in a manner "announcing submission." *Id.* at 974.  Officers yelled repeatedly for Plaintiff to drop his weapon while they struggled to retrieve it; Officer Whitehead felt Plaintiff tense his arm when he tried to move it; and, up until the moment Plaintiff was handcuffed, officers were yelling at each other to grab control of his arms and hands as they tried to subdue him.  Given this critical factual difference, *Johnson* does not place the unlawfulness of Officer Whitehead's striking a suspect over whom the officers *lacked* control "beyond debate." *Wesby*, 583 U.S. at 63.

Meanwhile, the D.C. Circuit has recognized that, "in a quickly developing situation" like the one at issue here, officers may sometimes use substantial force to secure a suspect and place them in handcuffs. *See Scott v. District of Columbia*, 101 F.3d 748, 759–60 (D.C. Cir. 1996) (first quoting *Martin v. Malhoyt*, 830 F.3d 237, 261 (D.C. Cir. 1987); then citing cases).  The court thus cannot say that binding precedent at the time clearly established that Officer Whitehead acted unlawfully.

Plaintiff also cites cases he argues demonstrate a "robust consensus" of persuasive authority dictating the unlawfulness of Officer Whitehead's conduct, *Wesby*, 583 U.S. at 63, but they do not change the court's conclusion.  For starters, the three cases on which Plaintiff primarily relies were all decided after the events at issue in this litigation occurred. *See* Pl.'s Opp'n, Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot., ECF No. 157-3 [hereinafter Pl.'s Mem.], at 20–22 (first discussing *Cooper v. District of Columbia*, 548 F. Supp. 3d 170 (D.D.C. 2021); then *Johnson v. District of Columbia*, 490 F. Supp. 3d 144 (D.D.C. 2020); and then *Williams v. District of*

*Columbia*, 268 F. Supp. 3d 178 (D.D.C. 2017)).  They accordingly have no bearing on the court's analysis.  *See Brosseau v. Haugen*, 543 U.S. 194, 200 n.4 (2004) (per curiam).

Plaintiff does, however, cite several other cases decided before March 22, 2017, which he contends clearly established that "striking a subdued or restrained suspect constitutes excessive force in violation of the victim's constitutional rights."  Pl.'s Mem. at 18.  The court agrees that the cited cases stand for this general principle.  But neither the cases nor the general principle "squarely govern" the specific facts at issue here.  *Kisela*, 584 U.S. at 104.  Some of the cases are distinguishable for the same reason *Johnson* is—Plaintiff was not "subdued or restrained" like the suspects in the cited cases.  *See Ingram v. Shipman-Meyer*, 241 F. Supp. 3d 124, 141–42 (D.D.C. 2017) (noting that the officers had "gained control of [the suspect's] arms"); *Abbott v. Sangamon County*, 705 F.3d 706, 732–33 (7th Cir. 2013) (reasoning that "no reasonable officer could have understood" the plaintiff's conduct "to be active physical resistance" because she "made no movement").  Others are distinguishable by differences in the magnitude of the force employed or the threat potentially posed by the suspect.  *See Estate of Jones ex rel. Jones v. City of Martinsburg*, 961 F.3d 661, 665, 668–69 (4th Cir. 2020) (describing how all officers had retreated from the suspect, who lay motionless, when they collectively fired 22 rounds at him); *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 687 (6th Cir. 2007) (explaining that the officers repeatedly struck the suspect in the eye with a stick after pepper spraying her and then struck her on her back, neck, and shoulders for around fifteen minutes); *Dixon v. Richer*, 922 F.2d 1456, 1463 (10th Cir. 1991) (describing how, after frisking the suspect but apparently finding no weapon, the officers then struck the suspect with a flashlight, choked him, and beat him).  These cases thus do not provide a "robust consensus" of persuasive, on-point authority as to the unlawfulness of Officer Whitehead's actions.  *Wesby*, 586 U.S. at 63.

Plaintiff responds with a different articulation of the clearly-established inquiry for this case. As he sees it, "[t]he relevant inquiry is whether, accepting Plaintiff's version of the facts, a reasonable officer should have known that it was unlawful to repeatedly strike with a closed fist a subdued suspect in the face and head when the suspect was on his back, neither actively resisting nor posing an imminent threat to the officers or a risk of flight." Pl.'s Mem. at 17. As discussed above, however, the first premise of this framing is flawed: on this record, there is no genuine dispute that Plaintiff was not "subdued." The court acknowledges that a suspect need not be handcuffed to be considered subdued. *See* Pl.'s Mem. at 18–19 (citing cases). But here, Plaintiff was not subdued until the officers handcuffed him. *See* Whitehead Dep. at 20:3-17; Defs.' Mot., Ex. 8, Dep. of Angel Roman, ECF No. 154-10, at 7:9-14; *see generally* Zaw BWC.

Plaintiff's argument that he did not pose an imminent threat to the officers is also unpersuasive. He bases his argument on the fact that some officers were "just standing around and not responding in a manner that would indicate they thought Plaintiff was a threat," as well as testimony from those officers that they did not feel threatened by Plaintiff. Pl.'s Stmt. ¶¶ 32, 35. But Plaintiff's evidence does not create a genuine dispute as to whether the relevant officer— Officer Whitehead, who was actively trying to subdue Plaintiff instead of standing at a distance— could perceive Plaintiff as a threat. Officer Whitehead and another officer who also was actively trying to restrain Plaintiff, Officer Williams, both testified they were concerned Plaintiff might have another weapon and that he posed a threat until he was handcuffed. *See* Whitehead Dep. at 15:6-10, 20:3-17, 24:10–25:3; Williams Dep. at 8:6-11, 9:4-20.

Admittedly, the officers' subjective perceptions are beside the point. The qualified-immunity inquiry is an objective one. It asks whether, in the specific situation at issue, a reasonable officer would have known the unlawfulness of his actions. *See Lash v. Lemke*, 786 F.3d 1, 7

11

(D.C. Cir 2015). "It is that objective test, not [the plaintiff's] knowledge or [the officer's] thoughts, that determines the scope of qualified immunity." *Id.* Plaintiff has not provided any then-existing precedent that would have put a reasonable officer in Officer Whitehead's position on notice that his conduct was unlawful. Officer Whitehead is therefore entitled to qualified immunity on Plaintiff's excessive-force claim.

### C. Remaining Claims

The parties appear to agree that Plaintiff's remaining two claims rise and fall with the court's conclusion on qualified immunity. *See* Defs.' Mot., Defs.' Mem. of P. & A. in Supp. of Defs.' Mot., ECF No. 154-1, at 14; Pl.'s Mem. at 23–24. Because the court finds that Officer Whitehead is entitled to qualified immunity on Plaintiff's excessive-force claim, it grants Defendants summary judgment on his assault-and-battery and vicarious liability claims, as well. *See Leach I*, 2022 WL 1316436, at *8 ("[C]ourts' analysis of the qualified privilege mirrors the qualified-immunity inquiry." (citing *Rogala v. District of Columbia*, 161 F.3d 44, 57 (D.C. Cir. 1998))); *Arrington v. District of Columbia*, 597 F. Supp. 2d 52, 59 n.13 (D.D.C. 2009) ("[T]he City is not liable for any actions of defendant [] from which he is shielded from liability by qualified immunity.").

## V. CONCLUSION

For the foregoing reasons, the court grants Defendants' Motion for Summary Judgment, ECF No. 154. A final, appealable order accompanies this memorandum opinion.[2]

Dated: December 23, 2025

Amit P. Mehta
United States District Judge

---

[2] The court once more expresses its gratitude for court-appointed counsel's zealous advocacy of Plaintiff.